UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| WILLIAM W. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-507-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| THE GUARDIAN LIFE INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY OF AMERICA, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff William Martin has filed a trio of discovery motions in this appeal involving the denial of insurance benefits under a long-term disability plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Specifically, Martin seeks to compel depositions, impose sanctions, strike certain portions of the administrative record, and compel discovery responses from Defendant the Guardian Life Insurance Company of North America [Record Nos. 17, 24, 34] For the reasons that follow, the plaintiff's motions will be granted, in part, and denied, in part.

I.

Martin obtained disability insurance from Guardian through his employer. [Record No. 1-2, ¶ 12] After developing health problems, he applied and was approved for short-term disability ("STD") benefits from August 12, 2017, through February 9, 2018. *Id.* ¶ 16. Martin then applied for long-term disability ("LTD") benefits, which the defendant approved per a letter dated May 1, 2018. *Id.* ¶ 17. The defendant paid Martin's LTD benefits from February 10, 2018, through February 10, 2020.

- 1 -

In a letter dated March 4, 2020, Guardian advised Martin that it had denied LTD benefits beyond February 10, 2020, because he was not disabled from gainful work on a full-time basis with reasonable accommodation. *Id.* ¶ 19. Martin appealed the decision administratively on June 16, 2020. *Id.* ¶ 20. On July 31, 2020, Guardian acknowledged receipt of Martin's appeal and advised that it was "asserting its right to take an additional 45-day extension" which would expire on September 15, 2020. *Id.* ¶ 21. The day before the deadline was set to expire, Guardian informed Martin that it was still seeking information from one of his treating physicians, Dr. Brown. Martin agreed to allow Guardian the additional time until it had received a response from Dr. Brown.

In a letter dated October 8, 2020, Martin confirmed his conversation with Guardian that it had received a response from Dr. Brown and that the agreed-upon extension of time had expired. *Id.* ¶ 24. Guardian issued a decision denying benefits in a letter dated November 6, 2020. *Id.* ¶ 32.

Martin filed a civil action challenging the denial of benefits in the Mercer Circuit Court on November 16, 2020. He alleged that the defendant's failure to pay LTD benefits was a breach of the parties' insurance contract. Additionally, he alleged that Guardian had violated various provisions of ERISA and that the decision to deny benefits was arbitrary and capricious. Guardian removed the matter to this Court on December 18, 2020.

## II.

The general rule in ERISA cases is that claimants are not entitled to obtain discovery outside of the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 617 (6th Cir. 1998); *Smith v. Hartford Life & Acc. Ins. Co.*, 2019 WL 3849158, at *4 (E.D. Ky. Aug. 15, 2019). The policy behind this approach is to resolve benefits disputes as

inexpensively and expeditiously as possible. *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 785-86 (E.D. Ky. 2014) (citing *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir. 1990)). However, limited discovery is available when the claimant makes a satisfactory allegation of a violation of due process or bias by the plan administrator. In this situation, the court may look outside the administrative record to consider circumstances that might have affected the administrator's conflict of interest. *MetLife Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008).

An inherent conflict of interest exists when the plan administrator both evaluates and pays the claim. *Busch v. Hartford Life & Acc. Ins. Co.*, 2010 WL 3842367, at *3 (E.D. Ky. Sept. 27, 2010) (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)); *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 412 (W.D. Ky. 2015). Accordingly, the plaintiff is entitled to some discovery in that scenario. *Id.* However, the scope of discovery is not unfettered and must be determined by the court. *Busch*, 2010 WL 3842367, at *3 . It must be sufficiently broad to permit the claimant to show whether the conflict affected the benefits determination but must remain "focused on issues of bias, conflict of interest and procedural due process questions." *Gluc*, 309 F.R.D. at 413.

District courts within the Sixth Circuit have identified specific "topics on which discovery related to an inherent conflict of interest" may be conducted. *Busch*, 2010 WL 3842367, at *4 (quoting *Mullins v. Prudential Ins. Co. of America*, 267 F.R.D. 504, 513 (W.D. Ky. 2010)). They include:

> (1) Incentive, bonus, or reward programs or systems, formal or informal, for any employee(s) involved in any meaningful way in reviewing disability claims[.]

> (2) Contractual connections between [the defendant] and the reviewers utilized in the plaintiff's claim, and financial payments paid annually to the reviewers from [the defendant].
> (3) Statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted.
> (4) Statistical data concerning the number of times the reviewers found claimants able to work in at least a sedentary occupation or found that the claimants were not disabled.
> (5) Documentation of administrative processes designed only to check the accuracy of grants and claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claim).

*Id.* (internal quotation marks and citations omitted).

The Court considers the plaintiff's discovery requests with these general principles in mind.

### III.

#### A. Martin's Motion to Compel Depositions

Martin contends (and Guardian does not dispute) that Guardian was both the evaluator and payor of his claim for LTD. He seeks to compel the depositions of Delondria Terry, Christina Moretz, and a Guardian representative designated under Rule 30(b)(6) of the Federal Rules of Civil of Civil Procedure. According to Martin, Terry is a Group LTD Senior Case Manager and the individual who signed the first denial of his claim for LTD benefits. Moretz is an Appeals Case Manager II and signed the denial of his LTD benefits on appeal. According to Martin, he repeatedly requested dates to depose these individuals and provided Guardian with legal authority demonstrating that he is entitled to take the depositions. [Record No. 17, p. 2]

While Guardian has refused to make Terry and Moretz available for deposition, it has advised Martin that it is willing to produce a Rule 30(b)(6) representative, but with respect to issues narrower than those requested by Martin.

Guardian contends that Martin has not provided any legitimate reason for needing to depose Terry and Moretz in addition to the Rule 30(b)(6) representative. In reply, Martin argues that his discovery requests are not disproportionate to the needs of the case, as the depositions will be taken on the same day and should only take up to two hours each. Further, Martin indicates that, contrary to what is stated in Guardian's discovery response, Terry and Moretz had access to information concerning the amount and duration of his benefits. Martin argues that he should "be allowed to obtain accurate and complete information from Guardian personnel who may have knowledge of Guardian's bias and conflict of interest." *Id.* Further, Martin contends he should not be required to rely exclusively on the defendant's "prepped corporate representative," who the plaintiff believes "may provide incomplete or evasive answers." [Record No. 33, p. 2]

Courts within this district and the Western District of Kentucky have routinely granted plaintiffs' motions to compel depositions in ERISA cases when they are specifically limited to the issues of conflict of interest, bias, or due process violation. *See Gluc*, 309 F.R.D. at 418-19 (granting plaintiff's motion to compel depositions of three Prudential employees who processed her claim as well as that of a Rule 30(b)(6) representative); *Blackwell v. Liberty Life Assurance Co. of Boston*, 2016 WL 3004568 (W.D. Ky. May 20, 2016) (permitting plaintiff to depose employees who signed initial and appeal denial letters); *Owens v. Liberty Life Assurance Co. of Boston*, 4: 15-CV-071 W.D. Ky. Jan. 19, 2016 (same); *Davis v. Hartford Life & Acc. Ins. Co.*, 2015 WL 7571905, at *12-13 (W.D. Ky. Nov. 24, 2015) (same); *Smith v. Hartford Life & Acc. Ins. Co.*, 2019 WL 6829953 (E.D. Ky. Dec. 13, 2019) (observing that, had the plaintiff served her request for discovery prior to the deadline, she "would appear to

have a good argument for deposing" the analyst who was responsible for denial of her LTD claim, "so long as such deposition would exclusively probe bias").

Based on the foregoing, Martin's motion to compel the depositions of Delondria Terry and Christina Moretz will be granted. The depositions, however, will be limited to the issues of conflict of interest and bias.

### B. Martin's Request for Sanctions

Martin asks the Court to impose sanctions under Rule 37 of the Federal Rules of Civil Procedure based on Guardian's failure to make Terry and Moretz available for deposition. Rule 37(a)(5)(A) provides:

> If the motion [to compel] is granted—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified.

Substantial justification exists when there is a genuine dispute between the parties in which reasonable people could disagree on the appropriateness of one party or the other's decisions regarding the contested discovery objections and responses. *Blackwell*, 2016 WL 3004568, at *17. While the virtually all of the case law within this district supports Martin's position regarding Terry and Moretz's depositions, the Court cannot say that reasonable people could not disagree on the subject. The majority of case law is unpublished and the topic of discovery in ERISA actions remains unsettled. Further, the district court has significant discretion in determining what discovery will be permitted. Accordingly, the motion for sanctions will be denied.

### C. Motion to Strike Portions of the Administrative Record

Guardian advised Martin that his LTD benefits would be discontinued in a letter dated March 4, 2020. [AR 2145] The letter advised Martin of his right to administratively appeal the decision within 180 days and included the following instructions:

> Guardian will notify you of its decision within 45 days of receipt of your written request for review. If special circumstances require an extension of time for a decision on review, the review period may be extended by an additional 45 days (90 days in total). Guardian will notify you in writing if an additional 45-day extension is needed. If an extension is necessary due to your failure to submit the information necessary to decide the appeal, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days from the receipt of the notice to provide the specified information. If you deliver the requested information within the time specified, the 45-day extension of the appeal period will begin after you have provided the information. If you fail to deliver the requested information within the time specified, we may decide your appeal without that information.

[AR 2149]

Guardian notified Martin that it received his request for appeal on June 19, 2020. [AR 2837] The letter stated that Guardian would issue a ruling within 45 days of that date (i.e., August 2, 2020). However, it advised that if it needed additional information to complete the review and/or an extension of time beyond 45 days to review the information, it would notify Martin in writing. *Id.*

Guardian issued a letter to Martin on July 31, 2020, indicating that it had sent copies of certain medical records to treating providers for review, but had not yet received their responses.[1] Since the initial 45-day period was set to expire on August 2, 2020, Guardian was

---

[1] According to Guardian's July 31, 2020 letter, these records included "copies of [Martin's] medical records from his treating providers, a Functional Capacity Evaluation, an Independent Medical Examination, a Vocational Evaluation and a Medical Opinion form from Ray Hagan, PT." [AR 2846]

notifying Martin of its election to extend the review period for another 45 days. Accordingly, the review period would expire on September 15, 2020. [AR 2846] *See* 29 C.F.R. §§ 2560.503-1(i)(1)(i); 2560.503-1(i)(3)(i).

According to Martin, Guardian contacted his attorney on September 14, 2020, stating that it still had not received a response from treating physician Dr. Brown. A representative from Guardian advised Martin's attorney that "the med on file is not supporting the findings of the FCE," and requested an extension of time to obtain a response from Dr. Brown. [AR 556] A letter from Guardian dated September 14, 2020, indicates that counsel agreed to an additional extension through October 29, 2020, during a telephone call. [AR 2882] Martin disputes this and contends that he agreed to an extension "only until Guardian received a response from Dr. Brown." [Record No. 24, p. 3] Guardian received a response from Dr. Brown on September 28, 2020, in which Brown agreed with the FCE findings that Martin was unable to perform sedentary work on a full-time basis. [AR 2883, 2905]

Guardian contacted Martin's attorney on October 1, 2020, and inquired whether Martin would agree to undergo an independent medical examination ("IME"). [AR 558] Martin did not undergo an IME but Guardian subsequently had his case reviewed by two independent peer physicians.[2] [AR 2971-2985] Amparo Gordian, M.D. reviewed the case on October 20, 2020, and concluded that Martin was capable of performing full-time sedentary work. [AR 2971-76] Jamie Lewis, M.D., reviewed the case the same day and likewise concluded that Martin was able to perform sedentary work. [AR 2977-2985] Recognizing that the decision deadline was approaching, Guardian asked Martin's attorney for another extension. [AR 2988]

---

[2] There appears to be some confusion as to whether Martin "refused" to undergo an IME.

Martin's attorney advised Guardian that Martin would decide about the extension after seeing the reports of the independent peer physicians. [AR 3007]

Three days later (October 29, 2020), Martin's lawyer responded to Guardian, declining to agree to a further extension and arguing for the first time that the appeal period ended when Guardian received a response from Dr. Brown. [AR 3010-3013] In a letter dated November 6, 2020, Guardian upheld its decision denying Martin's claim for LTD benefits. [AR 3171]

Martin now argues that all "documentation and notations" in the administrative record after September 29, 2020, should be stricken. Title 29 C.F.R. § 2560.503-1 sets forth the minimum claims procedures to be followed in administrative actions involving employee benefit plans governed by ERISA. As relevant here, the plan administrator is required to notify the claimant of the plan's benefit decision within 45 days after receipt of the claimant's request for review. §§ 2560.503-1(i)(1)(i); 2560.503-1(i)(3)(i). However, if the plan administrator determines that special circumstances necessitate an extension of time, the period can be extended up to 45 additional days upon written notice to the claimant prior to expiration of the initial 45-day period. *Id.* "In no event shall such extension exceed a period of [45] days from the end of the initial period." *Id.*

The regulations also provide that, "[i]n the event that a period of time is extended as permitted pursuant to paragraph (i)(1) . . . or (i)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information." § 2560.503-1(i)(4). Martin appears to concede that the period of July 31, 2020, through September 28, 2020, was tolled while awaiting a response from Dr. Brown. [*See*

Record No. 24, p. 4.] However, he asserts that Guardian was required to render a decision as soon as it received Brown's response instead of holding the record open for an additional month while it continued to gather its own evidence.

Martin argues that Guardian's failure to render a decision by September 29, 2020, constituted a denial of his appeal and, therefore, all information in the administrative record after that date should be stricken. He cites *Soltysiak v. UNUM Provident Corporation*, 531 F.Supp.2d 816 (W.D. Mich. 2008), in support. The plaintiff in that case filed an appeal in district court after the defendant failed to make a benefit determination within the timeline provided by ERISA regulations. The court observed that the administrative record was limited to what existed at the time the claim was "deemed denied." *Id.* at 820. The court further noted that, in considering an ERISA action, the court "may not admit or consider any evidence not presented to the administrator." *Id.* (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)).

Unlike the plaintiff in *Soltysiak*, Martin did not file a civil action following a "deemed denial" of his administrative appeal. The district court's decision in *Heffernan v. UNUM Life Insurance Company of America*, 2001 WL 1842465 (S.D. Ohio Mar. 21, 2001), is illustrative. Like Martin, the plaintiff in *Heffernan* waited until she received a formal denial from the defendant before filing an action in court. When Heffernan sought to strike portions of the administrative record, the court explained that the purpose of the time-processing rules under 29 C.F.R. § 2560.503-1 is not to abruptly close the administrative record, but to "allow a plaintiff to file suit after the expiration of the time limit specified by regulation instead of waiting *ad infinitum* for a final administrative denial that is not forthcoming." *See id.* at *3.

Additionally, the *Heffernan* court observed that the Sixth Circuit has adopted a rule of substantial compliance with the time limits set forth in ERISA regulations; the crucial inquiry is whether the claimant was notified of the reasons for denial and had a fair opportunity for review. *Id.* (citing *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807-08 (6th Cir. 1996)). Regardless of the propriety of Guardian's decision to seek additional evidence following receipt of Dr. Brown's opinion, Martin has not demonstrated that striking evidence considered by the administrator prior to rendering a final decision is an appropriate remedy. Accordingly, the motion to strike will be denied.

### D. Martin's Motion to Compel Discovery Responses

Martin contends that, despite repeated requests, Guardian has failed to provide discoverable information in response to his interrogatories and requests for production. The Court will address these issues in turn.

**1.** Martin has propounded the following interrogatories concerning three medical reviewers who reviewed his claim, Dr. Jamie Lewis, Dr. Amparo Gordian, and Nurse Practitioner Amy Gilmer:[3]

> Interrogatory No. 5: For any individual or entity listed in response to Interrogatory No. 2, identify the number of claims reviewed or submitted by this entity or person for the Defendant during the years 2012 to present.
>
> Interrogatory No. 6: For any individual or entity listed in response to Interrogatory No. 2, identify the number of claims for the years 2012 to the present that the individual or entity found the claimant able to work in at least a sedentary occupation or found the claimant not to be disabled.

---

[3] Martin asked Guardian to list the names of medical reviewers that reviewed his claim for LTD benefits in Interrogatory No. 2. According to Martin, Guardian refused to answer and Martin has gleaned these names from his review of the Administrative Record. [Record No. 34, p. 5] Guardian does not appear to dispute that these individuals reviewed Martin's claim. [*See* Record No. 38]

Interrogatory No. 7: For the number of claims reviewed by the individuals or entities identified in Interrogatory No. 2, as requested in Interrogatory No. 5, provide the number of those claims denied by the Defendant.

"Generally, courts have allowed discovery regarding whether . . . there is a history of biased claim denials." *Kasko*, 33 F. Supp. 3d at 788 (E.D. Ky. 2014). This includes statistical information such as the "number of claim files sent to the reviewers and the number of denials that resulted." *Gluc*, 309 F.R.D. at 414. It also includes the "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*

In response to Martin's motion to compel, Guardian argues the statistical information sought is not probative of conflict or bias. Guardian relies on district court cases from the Ninth Circuit to support this proposition, but this Court has previously concluded that such discovery requests are permissible to reveal potential bias by claim reviewers. *See e.g., Brainard v. Liberty Life Assurance Company of Boston*, 2014 WL 7405798 (E.D. Ky. Dec. 30, 2014).

Guardian also contends that the requests are overbroad and unduly burdensome. Guardian first argues that Martin should only be allowed to conduct discovery concerning individuals who handled his "most recent denial." But Guardian has not explained how the requested restriction would narrow the scope of Martin's request. Drs. Gordian and Lewis reviewed the claim on the same date—October 20, 2020. And Amy Gilmer's role is unclear. Martin's final denial letter states that "the medical records on file . . . as well as the information received on appeal were referred to Nurse Case Manager, Amy G., RN," on an unspecified date. [AR 3179]

Guardian's reliance on this Court's decision in *Hatfield v. Life Insurance Company of North America*, 2015 WL 5722791, at *3 (E.D. Ky. Sept. 29, 2015) is misplaced. Like Martin, the plaintiff in *Hatfield* sought statistical information concerning the medical reviewers who reviewed his claim. Specifically, the plaintiff asked the number of claims reviewed during the five year period preceding the plaintiff's claim and the number of times the doctor opined or determined that the claimant was or was not disabled. *Id.* at *1. The Court rejected the defendant's argument that the request was overly burdensome, noting that the request included only those reviewers who were involved in the plaintiff's claim and was limited to the last five years. *Id.* at *4. The Court observed that evidence of earlier administrative denials was not relevant to the question of bias *because they had been overturned at the administrative level*. Martin's case does not involve denials that were overturned at the administrative level.

Guardian next takes issue with Martin's request for "the number of claims . . . that the individual or entity found the claimant able to work in at least a sedentary occupation *or* found the claimant not to be disabled." Guardian contends that third-party medical reviewers do not "review claims" or make disability determinations; instead, they only "evaluate claimants' functional limitations. [Record No. 38, p. 8] In additional to specific functional limitations regarding lifting, sitting, walking, and standing, Dr. Gordian's report includes the following statement: "Per our panel discussion, the claimant is able to perform a full time sedentary position with consideration of subjective pain and the functional capacity evaluation determination. However, no evidence to support an inability to work full time." [AR 2974-75] Dr. Lewis also opined that Martin would have the capacity to perform gainful employment on a full-time basis, with specific functional limitations. [AR 2982] Since the interrogatory is phrased in the disjunctive, the defendant should have no problem responding to the inquiry.

Finally, Guardian contends that Martin's request for information going back to 2012 is overly broad. However, plaintiffs routinely have been permitted such discovery in conflict-of-interest cases. *See Aliff v. Prudential Insurance Company of America*, 2019 WL 4197211, at *5 (E.D. Ky. Sept. 4, 2019) (defendant was required to disclose statistical information concerning third-party vendors' denial of claims going back 10 years); *McQueen v. Life Insurance Co. of North America*, 595 F. Supp.2d 752, 755 (E.D. Ky. 2009) (same); *Pemberton v. Reliance Standard Life Insurance Company*, 2009 WL 89696, at *3 (E.D. Ky. Jan. 13, 2009) (same). Further, as this Court has explained previously, a defendant's failure to maintain this type of information is not a reason to preclude discovery. *See Aliff*, 2019 WL 419211, at *5.

**2.** Martin also seeks information regarding annual payments Guardian made to the medical reviewers who reviewed Martin's appeal to determine if there was a financial incentive that resulted in bias. Specifically, Martin propounded the following interrogatory and request for production:

> <u>Interrogatory No. 4</u>: For any individual or entity listed in response to Interrogatory No. 2, identify how much the Defendant has paid to this person or entity for the years 2012 to present for each year, regardless of whether the individual or entity is an employee of the Defendant or an outside consultant.
>
> <u>Request No. 8</u>: Please produce W-2 and 1099 forms that show amounts paid by the Defendant for the years 2012 through the present to any Medical Reviewers or Vocational Consultants, or their employers, who were involved in Plaintiff's claims.

Guardian offers several reasons for not responding to these requests.[4] First, it contends that it should not be required to respond to the request with respect to Drs. Lewis and Gordian

---

[4] Guardian contends that Amy Gilmer is its employee and therefore her compensation history is excluded from discovery. *See Busch v. Hartford Life & Accident Ins. Co.*, 2010 WL 3842367 (E.D. Ky. Sept. 27, 2010). Martin does not mention Gilmer in this portion of his

- 14 -

because it does not pay them directly but, instead, pays their employer, MLS Group. Despite this assertion, Guardian reports that it has already produced invoices from Drs. Lewis and Gordian for their evaluations of Martin's claim. And while it suggests that doing so would be onerous, Guardian indicates it would be able to create records of annual payments to MLS *per physician* by reviewing such payments "file by file." [Record No. 38, p. 10]

As this Court explained in *Kasko*, evidence of the one-time payment made to a reviewing source could be insufficient to demonstrate bias. 33 F. Supp. 3d at 789. Accordingly, "courts have permitted discovery concerning the amount of annual payments made by an administrator to reviewing third parties." *Id.* This information is relevant because it could show long-term financial incentives to doctors hired to review claims.

Guardian cannot avoid its responsibility to disclose this information by utilizing third-party examiners that are employed by peer review service companies. Accordingly, Guardian will be required to respond to the interrogatory with respect to the annual payments made to MLS Group for claim-review services provided by Drs. Lewis and Gordian. Martin is also entitled to the supporting documentation for the payments described in Interrogatory No. 4. *See Hatfield*, 2015 WL 5722791, at *4 (compelling disclosure of W-2 and 1099 forms showing amounts defendant paid to medical reviewers for past ten years).

    **3.**    Martin also seeks certain medical reviewer documentation through the following request for production:

> Request No. 6: For Dr. Jamie Lewis and Dr. Amparo Gordian, please produce all documents related to the following: (a) instructions or guidelines given to them by the Defendant on how to perform a review; (b) all draft and final reports, including all edits, prepared by Dr. Lewis and Dr. Gordian related to

---

motion to compel and, accordingly, Guardian will not be required to answer Interrogatory No. 4 with respect to Gilmer.

Plaintiff's claim and appeal; (c) dictated opinions of Dr. Lewis and Dr. Gordian (recordings and actual draft from dictation); (d) correspondence between Dr. Lewis and Dr. Gordian with Guardian, including all emails, faxes, notes, letters; and (e) a list of all documents provided to Dr. Gordian and Dr. Lewis related to Plaintiff's claim.

Martin elaborates: "If there are any draft reports by Dr. Lewis or Dr. Gordian, or emails between the medical reviewers and Guardian that have not been produced, then Martin requests that Guardian produce said documentation, as it should have been included in the administrative record." [Record No. 34, p. 8] Guardian reports that it has made a good faith attempt to comply with Request Number 6 and that it does not have any further correspondence that was not already disclosed in the administrative record. Accordingly, this portion of the plaintiff's motion will be denied as moot.

**4.** Martin seeks the following information and documentation regarding any incentive programs:

> Interrogatory No. 8: For each individual or entity identified in Interrogatory No. 2, state the amount of any bonuses, stock options, or other performance rewards from 2012 through the present, and state the criteria under which any such bonuses were calculated for that individual, including the formulas for calculating such bonuses, and provide the criteria, evaluations and other performance reports which show how the bonus was calculated for that individual.
>
> Interrogatory No. 10: Identify the grounds for performance evaluation, promotion, demotion and/or layoff/termination decisions with respect to any individual or entity identified in Interrogatory No. 1.
>
> Request No. 9: Please produce the Defendant's written criteria or standards for employee compensation, bonuses, and awards.

Guardian contends that it has made a good faith effort to provide the requested information concerning its employees' performance bonuses, annual reviews, and the criteria for such compensation. [Record No. 38, p. 12] Despite its failure to produce information

concerning the individual employees that reviewed Martin's claim, Guardian provided substantive responses to these interrogatories. Specifically, it states that

> its claims personnel do not receive bonuses based on the number of claims they deny. Guardian does not provide its claims personnel with stock options, nor does it provide any incentives, remuneration, bonuses, awards, achievements, or other recognition based on whole or in part upon the denial or termination of claims. Rather, Guardian's claims decision-makers are paid fixed salaries and performance bonuses that are wholly unrelated [to] the number of claims paid or claims denied. During their annual review, claims personnel are critiqued based on the timeliness and thoroughness of their investigations, their compliance with applicable DOL regulations, and whether their decisions are supported by the documents and information obtained during the claim investigation process. The subject of claims approved versus claims denied is never raised during annual reviews, and it does not effect, nor is it considered in, claims personnel reviews or compensation decisions.

[Record No. 34-7, p. 3]

Courts within the Sixth Circuit have been reluctant to authorize discovery regarding individual employees, particularly when the plaintiff has not come forward with specific information suggesting the influence of bias in the administration of his claim. *See Hays v. Provident Life & Acc. Ins. Co.*, 623 F. Supp. 2d 840, 844-45 (E.D. Ky. 2008); *Davis v. Hartford Life & Acc. Ins. Co.*, 2015 WL 7571905, at *6 (W.D. Ky. Nov. 24, 2015).

For the most part, Guardian has adequately explained how its employees are compensated and that bonuses and incentives are not tied to claims determinations. However, Guardian has not identified what factors it *does* consider in awarding bonuses to employees who review claims. If those factors are communicated to employees, they may be relevant to a potential conflict of interest or bias. *See Hulst v. Aetna Life Insurance Co.*, 2013 WL 5675513, at *2-3 (E.D. Ky. Oct. 17, 2013). Accordingly, Guardian must respond by identifying the specific factors considered in awarding bonuses to employees who review

claims for benefits. However, it is not required to produce any documents or identify information related to any specific employee. *See id.*

**5.** Finally, Martin has asked Guardian to disclose the training manuals used by its long-term disability department.

> Request No. 6: Please produce a complete copy of the Defendant's claims manual, or any other written instructions that are given to employees who make decisions in disability claims, whether referred to as training materials, guidelines, or other documentation showing the procedures or policies related to deciding if a claimant is entitled to benefits under their policy for LTD benefits.

Guardian contends that it has produced all portions of the claims manual that are relevant (i.e., the portions that were actually used to evaluate Martin's case). [Record No. 38, p. 14] Martin insists that Guardian has not disclosed sections of the manual that relate to financial issues such as "settlements, payments, social security, reversing decisions, special resources, etc." [Record No. 42, p. 7] He contends that these are relevant to his appeal because they "may reveal financial reasons to deny claims, including Martin's claim for disability benefits." *Id.* However, this Court has concluded previously that "internal policies and procedures that were not relied on for the specific determination are not discoverable, even where an inherent conflict of interest permits some discovery outside the administrative record." *Hatfield*, 2015 WL 5722791, at *5. At this point, Martin's request is overly broad and seeks information he is not entitled to discover.

### IV.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The plaintiff's motion to compel [Record No. 17] is **GRANTED**, in part, and **DENIED**, in part. The defendant shall make Delondria Terry, Christina Moretz, and a Rule 30(b)(b) representative available for depositions. The plaintiff's request for sanctions is **DENIED**.

2. The plaintiff's motion to strike portions of the administrative record [Record No. 24] is **DENIED**.

3. The plaintiff's motion to compel responses from the defendant [Record No. 34] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

Dated: May 17, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky